**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| CALVIN L. DIBRELL,<br><br>*Plaintiff*,<br><br>v.<br><br>PNC BANK, N.A. and BROCK & SCOTT, PLLC,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:26-cv-312<br><br>Judge Travis R. McDonough<br><br>Magistrate Judge Debra C. Poplin |

---

**MEMORANDUM AND ORDER**

---

Before the Court are the following: (1) a motion to dismiss filed by Defendant PNC Bank, N.A. ("PNC") (Doc. 13); (2) a document titled "Standing Challenge and Notice of Evidence Showing Foreclosure was Void" filed by Plaintiff Calvin L. Dibrell (Doc. 17); and (3) a motion to dismiss filed by Defendant Brock & Scott, PLLC ("Brock & Scott" or "B&S") (Doc. 19). For the following reasons, the Court will **GRANT** PNC and Brock & Scott's motions to dismiss.

## I. BACKGROUND

In an earlier order denying Dibrell's motion for temporary restraining order and preliminary injunction, the Court summarized the procedural history of this case and a previous case Dibrell filed against PNC and Brock & Scott:

> [Dibrell] filed a complaint in Case Number 3:24-cv-115 on March 12, 2024. *See Dibrell v. PNC Bank*, No. 3:24-CV-115, 2025 WL 490464, at *2 (E.D. Tenn. Feb. 13, 2025), *aff'd sub nom. Dibrell v. PNC Bank, NA*, No. 25-5380, 2026 WL 1133212 (6th Cir. Mar. 31, 2026). [Dibrell's] claims in Case Number 3:24-cv-115 centered around PNC Bank, N.A.'s ("PNC") and Brock & Scott, PLLC's ("B&S") efforts to foreclose on a loan secured by a deed of trust encumbering

> [Dibrell's] property at 5201 Holston Drive, Knoxville, Tennessee, 37914. *See id.* at *1–2. [Dibrell] asserted claims pursuant to various inapplicable statutes and the Fair Debt Collection Practices Act ("FDCPA"). *Id.* at *2, *4–7. The Court granted PNC summary judgment on all of [Dibrell's] claims, *see id.* at *4–7, and it dismissed [Dibrell's] claims against B&S after [he] failed to properly serve B&S pursuant to Federal Rule of Civil Procedure 4(m). *See Dibrell v. PNC Bank*, No. 3:24-CV-115, 2025 WL 1174309, at *3 (E.D. Tenn. Apr. 22, 2025).
>
> [Dibrell] filed the present action on July 1, 2026. (*See* Doc. 1.) He alleges that PNC's and B&S's attempts to foreclose on his home at 5201 Holston Drive, Knoxville, TN 37914 are unlawful because PNC "previously issued an IRS Form 1099-C reporting cancellation of the mortgage" at issue.[1] (*Id.* at 1, 3.) [Dibrell] attaches the Form 1099-C to his motion for a TRO, and the document suggests that PNC cancelled the loan at issue in 2013. (*See* Doc. 2-1, at 1.) [Dibrell] asserts federal claims under this theory pursuant to the FDCPA and 12 U.S.C. § 2605. (*Id.* at 4–5.) [Dibrell] also asserts state-law claims for wrongful foreclosure and fraud. (*Id.*)

(Doc. 15, at 1–2.) In his operative complaint, Dibrell asserts claims against PNC and Brock & Scott for: (1) declaratory judgment that his mortgage debt was cancelled in 2013; (2) quiet title; (3) wrongful foreclosure; (4) violations of the FDCPA; (5) violation of Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"); and (6) fraud. (Doc. 1, at 4–5.) After the Court denied Dibrell's motion for temporary restraining order and preliminary injunction, PNC and Brock & Scott moved to dismiss Dibrell's claims against them. (Docs. 13, 19.) To date, Dibrell has not responded to the motions to dismiss, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a) (providing that parties "shall have 21 days in which to respond to dispositive motions"). Additionally, Dibrell has filed a motion titled "Standing Challenge and Notice of Evidence Showing Foreclosure was Void." (Doc. 17.) These motions are now ripe for the Court's review.

## II. STANDARD OF LAW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must

---

[1] Plaintiff also asserts his claims against an unnamed substitute trustee. (Doc. 1, at 2.)

contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at

679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. ANALYSIS

### A. PNC's Motion to Dismiss

PNC first argues that the Court should dismiss Dibrell's claims against it because his claims are barred by the doctrine of claim preclusion. (Doc. 13, at 3–6.) "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Heyliger v. State Univ. and Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. 1997) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1, 104 (1984) (citations omitted)). For claim preclusion to apply, it must be proven that there is: "(1) a final judgment on the merits in [the] prior action; (2) a subsequent suit between the same parties or their privies; (3) an issue in the second lawsuit that should have been raised in the first; and (4) that the claims in both lawsuits arise from the same transaction." *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015) (citation modified). "[I]f an action is dismissed on the merits, it operates as an absolute bar to any subsequent action between the same parties [or their privies] with respect to every matter that was actually litigated in the first case as well as every other ground of recovery that might have been presented . . . ." *Walker v. Gen. Tel. Co.*, 25 F. App'x. 332, 336 (6th Cir. 2001) (citing *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994)).

In this case, claim preclusion bars Dibrell's claims against PNC. In his prior action against PNC, Dibrell asserted claims based on PNC's efforts to foreclose on a loan secured by a deed of trust encumbering property at 5201 Holston Drive, Knoxville, Tennessee, 37914. Specifically, Dibrell claimed that PNC's actions "in attempting to collect property taxes and

initiating foreclosure proceedings against him violated 18 U.S.C. §§ 241, 242, and 1951, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e and 1619f, 118th Congress House Bills H.R. 3156 and 3956, and California's Tom Bane Civil Rights Act, California Civil Code § 52.1." *See Dibrell v. PNC Bank, NA*, No. 25-5380, 2026 WL 1133212 (6th Cir. Mar. 31, 2026). In that case, the Court granted summary judgment in PNC's favor on Dibrell's claims, which the Sixth Circuit affirmed on appeal. *See id*. Dibrell's prior lawsuit involved the same parties as the present lawsuit, and, in granting summary judgment in PNC's favor, the Court reached a final decision on the merits. Additionally, to the extent Dibrell's claims in this action are predicated on allegations that PNC wrongfully foreclosed on his property and is attempting to collect on a debt that was discharged in 2013, such claims should have been raised in his first action against PNC. In this action, Dibrell relies on a Form 1099-C as evidence that his debt on the subject property was discharged in 2013. (*See* Doc. 1, at 3; Doc. 2-1, at 1.) To the extent Dibrell is now claiming that PNC wrongfully foreclosed on his property or is attempting to collect on a debt that was discharged in 2013, such claims should have been asserted in his 2024 action in which he sought a court order requiring PNC to "cease and desist all foreclosure proceedings." (Doc. 1, at 3 in Case No. 3:24-cv-115.) Moreover, in responding to a motion to dismiss in the 2024 action, Dibrell attached a similar 1099-C as evidence that PNC discharged his debt. (*See* Doc. 25-1, at 1 in Case No. 3:24-cv-115.) Under these circumstances, Dibrell's claims in the present action arise from the same transaction and operative facts underlying his prior action, and they should have been asserted as part of his earlier filed action against PNC. As a result, the doctrine of claim preclusion bars his claims against PNC in this case. Accordingly, the Court will grant PNC's motion to dismiss and dismiss Dibrell's claims against it with prejudice.

### B. Brock & Scott's Motion to Dismiss

Brock & Scott argues that the Court should dismiss Dibrell's claims against it because the doctrine of issue preclusion establishes that he defaulted on his mortgage loan, and, as a result, his complaint fails to state a claim upon which relief can be granted. (*See generally* Doc. 19.)

#### *i. Issue Preclusion*

Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. Issue preclusion bars relitigation of an issue when:

> (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding.

*Gen. Elect. Med. Sys. Eur. v. Prometheus Health*, 394 F. App'x 280, 283 (6th Cir. 2010). In this case, the doctrine of issue preclusion bars Dibrell from arguing that he was not in default on his mortgage loan or that PNC wrongfully foreclosed on his property. In ruling on Dibrell's FDCPA claims against PNC in the prior litigation, the Court determined that undisputed evidence established that: (1) Dibrell defaulted on his loan payments; (2) PNC provided him notice of his default and opportunities to cure the default; (3) Dibrell declined to cure the default; and (4) Dibrell offered "no evidence suggesting that PNC did not have a right to foreclose on [his] property." (Doc. 28, at 13 in Case No. 3:24-cv-115.) The issue of whether Dibrell was in default on his mortgage loan was raised and litigated in the prior proceeding, determining this issue was necessary to determine whether his claim for violation of the FDCPA failed as a matter of law, the prior proceeding resulted in a final adjudication on the merits and was affirmed by the Sixth Circuit, and Dibrell had a full and fair opportunity to litigate this issue in the prior proceeding. As a result, the doctrine of issue preclusion forecloses Dibrell from arguing that he

did not default on his mortgage loan or that PNC wrongfully foreclosed on his property based on the 1099-C form that purportedly shows that his debt was cancelled in 2013.

### *ii. Failure to State a Claim*

Brock & Scott next argues that, because Dibrell is foreclosed from arguing that he did not default on his loan, his complaint fails to state a claim upon which relief can be granted. (Doc. 19, at 7–16.) As an initial matter, the Court notes that Dibrell's allegations regarding Brock & Scott are relatively limited. Specifically, Dibrell alleges that: (1) Brock & Scott "published a foreclosure notice scheduling the foreclosure sale of [his] home for July 23, 2026, at 11:00 a.m., stating that it was 'attempting to collect a debt"; and (2) Brock & Scott "is identified in this Complaint as the law firm involved in the foreclosure proceedings concerning the subject property." (Doc. 1, at 2–3; *see also* Doc. 18, at 6.)

#### a. Quiet Title

In Tennessee, "[a] party wishing to obtain quiet title must plead that [he] has superior title against any other claimants." *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). Dibrell's complaint, however, does not allege that Brock & Scott is attempting to assert an interest in the subject property; rather, he alleges that Brock & Scott is the "law firm involved in the foreclosure proceedings." (Doc. 1, at 2.) Such allegations are insufficient to state a quiet-title claim against Brock & Scott. Accordingly, the Court will grant Brock & Scott's motion to dismiss Dibrell's quiet-title claim against it.

#### b. Wrongful Foreclosure

Tennessee does not recognize a "distinct cause of action for wrongful foreclosure." *Case v. Wilmington Tr., N.A.*, 703 S.W.3d 274, 295 (Tenn. 2024). However, borrowers who believe that their property has been unlawfully foreclosed are not without recourse, with courts

"analyzing claims for foreclosures gone wrong" under claims for breach of contract, tort claims, or statutory-violation claims. *Id*. Nonetheless, Dibrell's complaint does not include any factual allegations detailing how Brock & Scott breached a contract, unlawfully foreclosed on his property based on a tort recognized by Tennessee law, or as explained below, violated any statute in connection with the alleged wrongful foreclosure. Accordingly, the Court will grant Brock & Scott's motion to dismiss Dibrell's wrongful-foreclosure claim against it.

c. FDCPA

The FDCPA prohibits a debt collector from the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To state a claim for violation of the FDCPA under § 1692e, a plaintiff must allege that (1) he is a "consumer" as that term is defined by the Act; (2) the debt arises out of transactions which are "primarily for personal, family, or household purposes"; (3) the defendant is a "debt collector" as defined by the Act; and (4) the defendant violated § 1692e's prohibitions. *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

Dibrell's complaint fails to include allegations necessary to state a claim against Brock & Scott for violation of the FDCPA. Dibrell does not allege that he is a "consumer" under the Act, that the underlying debt arises out of transactions that are for personal, family, or household purposes, or that Brock & Scott is a debt collector as defined under the Act. Moreover, beyond his conclusory allegation that "attempting to collect on a cancelled debt" violates the FDCPA, Dibrell's complaint does not explain how Brock & Scott violated the FDCPA's prohibitions. Accordingly, he has not stated a claim against Brock & Scott for violation of the FDCPA, and the Court will grant Brock & Scott's motion to dismiss Dibrell's FDCPA claim against it.

d. RESPA

In enacting RESPA, Congress's intent was "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (quoting *Vega v. First Fed. Sav. & Loan Ass'n of Detroit,* 622 F.2d 918, 923 (6th Cir.1980)). Under RESPA, a loan servicer has certain duties to borrowers, including, among other things, duties related to responding to borrower inquiries and providing notice to the borrower of any assignment, sale, or transfer of a mortgage loan at the time of the transfer. *See* 12 U.S.C. § 2605(b), (e). Under RESPA, "servicer" is defined as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)" and "servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id*. at § 2605(i)(2), (3).

As the entire basis for his RESPA claim, Dibrell appears to assert that Brock & Scott is somehow liable because "[s]ervicing a non-existent loan violates 12 U.S.C. § 2605." (Doc. 1, at 5.) But Dibrell's complaint does not include any allegations suggesting that Brock & Scott is a "servicer" or his mortgage loan or that it ever serviced Dibrell's loan as that term is defined under RESPA. Rather, Dibrell generally alleges that Brock & Scott was involved in the foreclosure proceedings concerning his property. (*Id*. at 1–2, 5.) Such general and conclusory allegations are insufficient to state a claim for violation of RESPA against Brock & Scott.

Accordingly, the Court will grant Brock & Scott's motion to dismiss Dibrell's claim for violation of RESPA against it.

e. Fraud

Under Tennessee law, the elements of a fraudulent misrepresentation claim are:

> (1) an intentional misrepresentation of material fact;
>
> (2) the misrepresentation was made "knowingly," "without belief in its truth," or "recklessly without regard to its truth or falsity";
>
> (3) the plaintiff reasonably relied on the misrepresentation and suffered damages; and
>
> (4) the misrepresentation relates to an existing or past fact, or, "if the claim is based on promissory fraud, then the misrepresentation must 'embody a promise of future action without the present intention to carry out the promise.'"

*Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006) (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). Additionally, Rule 9(b) applies in cases in which a plaintiff alleges fraud and requires that "a party [] state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006). "To plead fraud with particularity, the plaintiff must allege[:] (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (citation modified); *see also Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614–15 (6th Cir. 2024) (requiring plaintiff to "specify the 'who, what, when, where, and how' of the alleged fraud.").

In this case, Dibrell's complaint fails to satisfy Rule 9(b)'s heightened pleading requirement and fails to allege facts stating a claim for fraud against Brock & Scott. Dibrell has not alleged: (1) the time, place, and content of any misrepresentation made by Brock & Scott;

(2) any facts plausibly suggesting that Brock & Scott made such a misrepresentation knowingly or with reckless disregard of the truth; (3) any facts plausibly suggesting that Brock & Scott intended to defraud him; or (4) any facts suggesting that he relied on a fraudulent misrepresentation made by Brock & Scott. As a result, Dibrell's complaint fails to state a claim for fraud against Brock & Scott. Accordingly, the Court will grant Brock & Scott's motion to dismiss Dibrell's fraud claim against it.

f. Declaratory Judgment

The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, gives district courts the discretion to hear actions seeking to declare the rights or legal relations of interested parties that fall within its purview. 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ."). In his complaint, Dibrell seeks a "declaration that the mortgage debt was cancelled in 2013 and is unenforceable." (Doc. 1, at 4.) Because the Court finds that Dibrell has otherwise failed to state a claim upon which relief can be granted, the Court will decline to exercise its discretion to declare the rights or legal relations of Dibrell in relation to Brock & Scott or in relation to whether his mortgage debt was cancelled in 2013.

## IV. CONCLUSION

For the reasons stated herein, PNC and Brock & Scott's motions to dismiss (Docs. 13, 19) are **GRANTED.** To the extent Dibrell's document titled "Standing Challenge and Notice of Evidence Showing Foreclosure was Void" requests that the Court order PNC and Brock & Scott to prove that they have standing to foreclose on his property (Doc. 17, at 4), his motion is

**DENIED**. Dibrell's claims against PNC and Brock & Scott will be **DISMISSED WITH PREJUDICE**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

**/s/ *Travis R. McDonough***
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**